UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____ RD-6665

MARTIN TANKLEFF,

                        Plaintiff,                        **CV-09-1207 (JS) (WDW)**

       -against-

THE COUNTY OF SUFFOLK,
K. JAMES MCCREADY, NORMAN REIN ,
CHARLES KOSCIUK, ROBERT DOYLE,
JOHN MCELHONE, JOHN DOE POLICE
OFFICERS #1-10, RICHARD ROE
SUFFOLK COUNTY EMPLOYEES #1-10,

                       Defendants.

_____


**DEFENDANTS' REPLY MEMORANDUM OF LAW
IN SUPPORT OF
DEFENDANTS' MOTION PURSUANT TO RULE 12(c)**


Dated: Hauppauge, New York
      June 8. 2010

                        CHRISTINE MALAFI
                        Suffolk County Attorney
                        Attorney for Defendants
                        COUNTY OF SUFFOLK, K. JAMES McCREADY,
                        NORMAN REIN, CHARLES KOSCIUK, ROBERT
                        DOYLE, and JOHN McELHONE
                        100 Veterans Memorial Highway
                        P.O. Box 6100
                        Hauppauge, New York 11788

                        By: Richard T. Dunne (RD/6665)
                             Assistant County Attorney

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ...................................................................................ii

POINT I
      THE COURT MAY AND SHOULD CONSIDER DEFENDANTS'
      EXHIBITS ON THIS RULE 12(c) MOTION WITHOUT
      CONVERTING THIS TO MOTION FOR SUMMARY JUDGMENT ...........................1

POINT II
      PROBABLE CAUSE BARS TANKLEFF'S CLAIMS REGARDLESS
      OF THE FACT THAT CONVICTIONS WERE VACATED ...........................................7

POINT III
      PLAINTIFF'S *BRADY* CLAIMS MUST BE DISMISSED .............................................12

POINT IV
      PLAINTIFF'S CLAIMS ARE BARRED BY COLLATERAL ESTOPPEL ...................14

CONCLUSION ...................................................................................................17

# TABLE OF AUTHORITIES

## FEDERAL CASES

Ashcroft v. Iqbal,
___ U.S. ___, 129 S. Ct. 1937, 173 L. Ed. 2d 863 (2009)..........................4, 5, 7, 12, 14

Batchilly v. Nance,
2010 WL 1253921 (S.D.N.Y. 2010) ...........................................................................14

Benn v. Lambert,
283 F.3d 1040 (9th Cir. 2002) ...................................................................................13

Broder v. Cablevision Systems Corp.,
418 F.3d 187 (2d Cir. 2005) .........................................................................................3

Caldarola v. Calabrese,
298 F.3d 156 (2d Cir. 2002) ...............................................................................8, 9, 10

Celestin v. City of New York,
581 F. Supp. 2d 420 (E.D.N.Y. 2008) ...........................................................................8

Cortec Ind., Inc. v. Sum Holding, L.P.,
949 F.2d 42 (2d Cir. 1991), ..........................................................................................3

Dukes v. City of New York,
879 F. Supp. 335 (S.D.N.Y. 1995) ................................................................................8

Friedl v. City of New York,
210 F.3d 79 (2d Cir. 2000) ............................................................................................3

Gil v. County of Suffolk,
590 F. Supp. 2d 360 (E.D.N.Y. 2008) .........................................................................10

Global Network Communications, Inc. v. City of New York,
458 F.3d 150 (2d Cir. 2007) ..........................................................................................5

Johns v. Town of East Hampton,
942 F. Supp. 99 (E.D.N.Y. 1996)...............................................................................2, 3

Kogut v. County of Nassau,
2009 WL 5033937 (E.D.N.Y. 2009) ................................................................10, 11, 14

McCray v. City of New York,
    2007 WL 4352748 (S.D.N.Y. 2007) .............................................................. 14

Mozzochi v. Borden,
    959 F.2d 1174 (2d Cir. 1992) ...................................................................... 8

Newman v. Holder,
    101 F. Supp. 2d 103 (E.D.N.Y. 2000) ............................................................ 4

Pani v. Empire Blue Cross Blue Shield,
    152 F.3d 67 (2d Cir. 1998) ......................................................................... 2

Patane v. Clark,
    508 F.3d 106 (2d Cir. 2007) ....................................................................... 3

Rothman v. Gregor,
    220 F.3d 81 (2d Cir. 2000) ......................................................................... 3

Singer v. Fulton County Sheriff,
    63 F.3d 110 (2d Cir. 1995) ......................................................................... 8

Sturdivant v. Barkley,
    2007 WL 21260935-6 (E.D.N.Y. 2007) ........................................................ 13

Washington v. U.S. Tennis Association,
    290 F. Supp. 2d 323 (E.D.N.Y. 2003) ............................................................ 2

## STATE CASES

Parker v. Blauvelt Volunteer Fire Co.,
    93 N.Y.2d 343 (1999) ............................................................................... 15

People v. Tankleff, 49 A.D. 3d 160, 182 (2d Dep't 2007) ........................... 6, 7, 11, 15, 16

## FEDERAL STATUTES

Federal Rules of Civil Procedure 12(c) ................................................... 1, 16, 17

## STATE STATUTES

New York Criminal Procedure Law § 440 ....................................................*passim*

iii

## POINT I

### THE COURT MAY AND SHOULD CONSIDER DEFENDANTS' EXHIBITS ON THIS RULE 12(c) MOTION WITHOUT CONVERTING THIS TO MOTION FOR SUMMARY JUDGMENT

Defendants County of Suffolk, Retired Detective K. James McCready ("Detective McCready"), Retired Detective Norman Rein ("Detective Rein"), Retired Detective Charles Kosciuk ("Detective Kosciuk"), Detective Robert Doyle ("Detective Doyle"), and Retired Detective Lieutenant John McElhone ("Detective McElhone") (collectively "defendants") submit this memorandum of law in reply to the opposition submitted by plaintiff Martin Tankleff ("plaintiff" or "Tankleff") to defendants' motion, pursuant to Federal Rules of Civil Procedure (hereinafter "Rule") 12(c), for judgment on the pleadings dismissing plaintiff's complaint. Cognizant of the purpose of a reply memorandum, defendants will address only the most salient points raised by plaintiff herein and will otherwise rely on defendants' main memorandum for the primary arguments in favor of dismissal of plaintiff's complaint.

Addressing plaintiff's procedural contentions first, plaintiff's efforts to have this Court ignore the affidavit of defendants' counsel and the exhibits annexed thereto, or convert this motion into one for summary judgment, are futile. Succinctly stated, as plaintiff's complaint emphasizes, plaintiff's claims are premised on "almost two decades" of criminal and legal proceedings (Plaintiff's Complaint, ¶ 20). Plaintiff's claims, as encompassed in the complaint, rely heavily upon the police investigation that commenced when plaintiff's parents were discovered to have been brutally murdered in their home  (*Id.*, ¶ 39-86; 157-64), the forensic evidence recovered by the police and testing thereof (*Id.*, ¶ 88-95), the criminal prosecution of Tankleff for the murder of his parents (*Id.*, ¶ 106-21), his conviction at  (*Id.*, ¶121), and his direct appeals from the convictions (*Id.*, ¶ 121-22), as well as his habeas corpus petition and appeals

1

(*Id.*), his post conviction New York Criminal Procedure Law ("CPL") § 440 proceedings, including the appeal from the County Court's denial of his motion (*Id.*, ¶ 124-33), as well as the special investigation by the New York State Office of the Attorney General ("Attorney General") and the subsequent motions to dismiss the outstanding charges against Tankleff (*Id.*, ¶ 134-36). Simply stated, plaintiff's complaint implicitly relies on the exhibits annexed to defendants' 12(c) motion (which primarily encompass court records), or otherwise incorporates by reference the documents submitted as exhibits. Defense counsel's affidavit serves merely to facilitate an understanding of the exhibits.

As this Court is well aware, a plaintiff may not avoid dismissal of his complaint by craftily wording the complaint and failing to annex to it documents which are integral to the claims set forth therein. *Global Network Communications, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006). Further, a district court may rely upon publicly filed records in deciding a motion to dismiss (*Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998)), including court documents from previous actions. *Washington v. U.S. Tennis Ass'n.*, 290 F.Supp. 2d 323, 326 (E.D.N.Y. 2003). This Court considered documents similar to those proffered herein, without recharacterizing the motion to dismiss as one for summary judgment, in *Johns v. Town of East Hampton*, 942 F.Supp. 99, 104 (E.D.N.Y. 1996), explaining that:

> [i]t is well established that when a "plaintiff fails to introduce a pertinent document as part of his pleading, [a] defendant may introduce the exhibit as part of his motion attacking the pleading." 5 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2d § 1327, at 762-63 (2d ed. 1990). In *Cortec Industries v. Sum Holding L.P.*, 949 F.2d 42 (2d Cir. 1991), *cert denied*, 503 U.S. 960, 112 S. Ct. 1561, 118 L. Ed. 2d 208 (1992), the Second Circuit Court of Appeals reaffirmed that the submission of documents referred to in the complaint as exhibits in support of a Rule 12(b)(6) motion is not considered reliance on outside materials so as to require the recharacterization of a motion to dismiss as one seeking summary judgment. *See id.*, at 47-48. The Second Circuit, in *Cortec*, further noted that a court may consider documents annexed to the movant's papers which,

although not annexed to the complaint, plaintiff either had "in [his] possession or had knowledge of and upon which [he] relies on bring suit." *Id.* at 48.

*Johns*, 942 F. Supp. at 104.

The Second Circuit, in *Cortec Ind., Inc. v. Sum Holding, L.P.*, 949 F.2d 42 (2d Cir. 1991), explained why a plaintiff cannot be heard to complain when a defendant submits documents on a motion to dismiss which the plaintiff relied on in its complaint, but failed to attach:

> [a] finding that plaintiff has had notice of documents used by defendant in 12(b)(6) motion is significant since, as noted earlier, the problem that arises when a court reviews statements extraneous to a complaint generally is the lack of notice to the plaintiff that they may be so considered; it is for that reason-requiring notice so that the party against whom the motion to dismiss is made may respond that Rule 12(b)(6) motions are ordinarily converted into summary judgment motions. Where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated.

*Cortec Ind., Inc*, 949 F.2d at 47-48.

*Friedl v. City of New York*, 210 F.3d 79 (2d Cir. 2000) notwithstanding, the Second Circuit has continually adhered to the law espoused in *Cortec* that a district court may rely on documents explicitly or implicitly relied upon by plaintiff in his complaint, without converting the motion to dismiss into one for summary judgment. *Patane v. Clark,* 508 F.3d 106, 112 (2d Cir. 2007); *Rothman v. Gregor*, 220 F.3d 81, 88 (2d Cir. 2000). In fact, the court may treat those documents as part of the complaint. *Patane*, 508 F.3d at 111, n.2. Moreover, where a document is integral to the complaint, the court need not accept the complaint's description of the document, but may look to the document itself. *Broder v. Cablevision Systems Corp.*, 418 F.3d 187, 196 (2d Cir. 2005). Thus, even documents that are not matters of public record, not attached to complaint or incorporated in it, may be considered by the district court in deciding a motion to dismiss, where plaintiff had notice and knowledge of the documents when bringing suit. *Patane*, 508 F.3d at 112. Inasmuch as the exhibits submitted by defendants on the instant

3

motion consist primarily of matters of public record, i.e., trial transcripts, trial evidence, post-trial documents related to plaintiff's appeals, writ of habeas corpus, CPL § 440 motion and the Attorney General's investigation, plaintiff cannot genuinely claim that he lacked knowledge or notice of any of the documents submitted, or even that they are not integral to his claim. Thus, this Court need not, and should not, convert this 12(c) motion into one for summary judgment. *Id.*, *Newman v. Holder*, 101 F. Supp. 2d 103, 105 (E.D.N.Y. 2000).

Tankleff's reliance on the Second Circuit's opinion in *Global*, 458 F.3d 150, in an effort to dissuade this Court from considering defendants' exhibits, is without merit. In the first instance, the trial documents submitted by the defendants in *Global* were from an "unrelated criminal proceeding." *Id.* at 156. In contrast, here, the defendants' documents emanate from the very same criminal investigation and trial that is central to, and forms the basis of, Tankleff's present assertion that defendants' actions in those proceedings violated, *inter alia,* his civil rights. It was the fact that the District Court in *Global* relied on the testimony from an unrelated trial for the truth of that testimony on a motion to dismiss that prompted the Second Circuit to reverse the lower court on the grounds that the motion should have been converted to one for summary judgment. *Id.* at 157.

Two further points must be made with respect to *Global.* One, to the extent that *Iqbal* now requires a court, when determining a motion to dismiss, to undertake a "context specific task," where it draws upon its judicial experience and common sense to determine whether the plaintiff's factual allegations are plausible, Tankleff may not hide behind *Global* in an effort to have this Court ignore the extensive court record from Tankleff's prior criminal proceedings. *Ashcroft v. Iqbal,* ___ U.S. ___, 129 S.Ct. 1937, 1950, 173 L.Ed. 2d 863 (2009). *Global's* holding must be viewed in the context of the Supreme Court's more recently articulated mandate

to the district courts. Secondly, reference to the entire *Global* opinion reveals that the Second Circuit took care to note that it was not necessarily disagreeing with the trial court's ruling on the merits. *Global*, 458 F.3d at 158. The Second Circuit merely found that the motion needed to be converted to one for summary judgment, at which point the District Court was essentially free to "reach the same conclusions as it did initially." *Id.*

While defendants maintain that this motion is properly one to dismiss under Rule 12(c), if this Court converts this motion to one for summary judgment, defendants submit it can do so on the papers submitted herein. Plaintiff's claim that he needs more discovery in order to flesh out his claims, should this motion be converted to one for summary judgment, is without merit and, in fact, an implicit concession that his allegations are "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" which are insufficient to withstand a motion to dismiss. *Iqbal*, 1295 S.Ct. at 1949. Should this Court nonetheless convert this to a Rule 56 motion, plaintiff's claims that discovery will somehow aid him in establishing his claims stretches credibility. Succinctly stated, it is difficult to conceive what plaintiff hopes to unearth after twenty years of litigation that will somehow alter what took place in 1988-90; the years when the criminal investigation and trial took place, and the period of time during which defendants' conduct must be judged. Stated even more plainly, the bulk of plaintiff's claims are governed by whether the defendant police officers' conduct was objectively reasonable at the time of Tankleff's arrest and prosecution. More precisely, the crux of Tankleff's claims center upon his arrest and the circumstances surrounding it.

There is nothing in the record from the various prior criminal proceedings to support any contention that probable cause to arrest and indict Tankleff eroded between the indictments and plaintiff's conviction after trial in 1990. In fact, the Second Department's decision which

5

vacated plaintiff's conviction in December 2007, expressly denied plaintiff's claim of actual innocence and let the original indictment stand (*People v. Tankleff*, 49 A.D. 3d 160, 182 (2d Dep't 2007)), clearly signifying that the presumption of probable cause remained intact in 2007. The decision by the Attorney General not to re-prosecute plaintiff had to do with the expectations of being able to prove the allegations to the standard of "beyond a reasonable doubt," and in no way disturbed the presumption of probable cause established by the indictments.

Between May 26, 2009 and November 13, 2009, the County provided 30 boxes of the material encompassing the entire record in the possession of the District Attorney's Office to plaintiff.[*]  Plaintiff now either possesses, or has had access to, all of the information that was available to the defendants at the time plaintiff was arrested, indicted and convicted.  All of the appellate and CPL § 440 material has been provided as well.  It is this information and material that becomes the basis for evaluating and determining the objectively reasonable standard for probable cause.  No additional depositions will ever change the quantum of information that was available to the defendants in 1988 when plaintiff was arrested and subsequently indicted for the murder of his parents.  To suggest otherwise is simply a veiled attempt to draw attention away from the information that clearly establishes that probable cause existed to believe plaintiff was responsible for the murder of his parents.

Whether defendants' motion is treated as one under Rule 12(c) or as a Rule 56 motion for summary judgment, plaintiff cannot defeat either application by speculating that he will unearth some new evidence that will vitiate the consequences of the evidence exchanged and submitted at his criminal trial, the results of the myriad of judicial proceedings, and the fact that his CPL

---

[*]    Note: 58 boxes total were reviewed by two of plaintiff's attorneys on 10/8-10/9/2009; 30 boxes were taken to plaintiff's attorney's offices for copying at their request.

§ 440 application was granted on the basis of "newly discovered evidence" (which presumes therein that such evidence could not have been discovered at the time of the original trial), and not on the basis of actual innocence. *Tankleff*, 49 A.D.3d at 182. Tankleff's continued speculation as to his ability to create an issue of fact if given the opportunity to conduct depositions as to whether Tankleff was convicted due to "unconstitutional customs of the Suffolk County Police Department," whether defendants withheld exculpatory information, fabricated the confession or conspired to frame Tankleff, when juxtaposed in the specific context that (i) a full trial was conducted, with the related *Huntley* proceedings, (ii) Tankleff has pursued these very same claims for decades in the state and federal courts with countless attorneys, and (iii) there was an independent investigation by the Attorney General, renders plaintiff's contentions implausible. This implausibility is further exemplified by the December 2009 findings of a State Investigation Committee undertaken at plaintiff's request. Defendants' Memorandum of Law in Support of Rule 12(c), Exhibit SS. Once this Court draws on its judicial experience and common sense, as it must do when determining this motion to dismiss (*Iqbal*, 129 S.Ct. at 150), defendants submit that, as a matter of law, plaintiff's complaint must be dismissed.

## POINT II

### PROBABLE CAUSE BARS TANKLEFF'S CLAIMS REGARDLESS OF THE FACT THAT CONVICTIONS WERE VACATED

As alluded to earlier, many of plaintiff's causes of action are readily dismissed, as a matter of law, because the objective evidence and information available at the time of plaintiff's arrest, indictment and thereafter establishes that, without ever even considering plaintiff's confession, there was more than sufficient evidence to establish probable cause to believe Tankleff had committed the murder of his parents. Once such probable cause is established,

plaintiff's claims for state and federal malicious prosecution, false imprisonment, civil conspiracy, intentional infliction of emotional distress and negligent infliction of emotional distress, cannot survive. In this regard, Tankleff's contention that the vacatur of his conviction somehow completely eradicates all of the evidence amassed in connection with the criminal proceedings is without merit. Likewise, plaintiff's assertion that he needs discovery in the form of depositions in order to obtain evidence to assist him in establishing the other elements of his malicious prosecution, false imprisonment and conspiracy counts is, simply, immaterial and nothing more than a red herring. For example, separate and apart from the fact that plaintiff's claims of malice as they pertain to Detective McCready are exactly the type of conclusory allegations addressed by *Iqbal*, the simple fact of the matter is that once probable cause is established, plaintiff cannot pursue his malicious prosecution, false imprisonment and civil conspiracy claims. *See, i.e., Celestin v. City of New York*, 581 F.Supp. 2d 420, 434-35 (E.D.N.Y. 2008). Therefore, his claims that discovery is necessary to assist him in establishing malice or improper motive in connection with those claims are futile. Stripped of all surplusage, once probable cause existed to arrest, irrespective of the police officer's motive, the court's inquiry is concluded. *Mozzochi v. Borden*, 959 F.2d 1174, 1180 (2d Cir. 1992). *See Dukes v. City of New York*, 879 F.Supp. 335, 343-44 (S.D.N.Y. 1995) (once there is a finding that there was probable cause for the criminal proceeding, the court need not reach the issue of malice).

The determination as to probable cause focuses on the facts available to the police officer and prosecution at the time of the arrest and indictment; here, September 7, 1988 – October 6, 1988. *See Caldarola v. Calabrese*, 298 F.3d 156, 162 (2d Cir. 2002); *Singer v. Fulton County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995). With respect to Tankleff, the evidence available at the time of his criminal trial, completely separate and apart from his confession, would irrefutably

8

lead a reasonable person to believe that the person arrested was the person who committed the crime; which is all defendants need to show in order to establish probable cause. *Caldarola*, 298 F.3d at 162.

Simply stated, while plaintiff continues his harangue as to the alleged involuntariness of his confession, his confession was not the only evidence that the police had upon which to base their arrest. Plaintiff may very well dispute the weight, or even the credibility, of certain evidence, however, plaintiff can not dispute that the police had the evidence delineated on pp. 15-17 of Defendants' Memorandum of Law in Support of Rule 12(c), which included the fact that Tankleff (the only other person in the house) was unharmed and claimed not to have heard anything; the blood splatter on the phone Tankleff claimed to have used was undisturbed; there was no blood on surfaces which should have had blood on them based upon Tankleff's version of his actions, and the fact that Tankleff could not have observed Arlene's injuries from the doorway to her room as he claimed. Plaintiff's implicit claim herein that there was no physical or biological evidence linking him to the murders is, simply, false. Evidence from the crime scene included bloodstains in Arlene's bedroom consistent with plaintiff's blood. Defendants' Exhibit B, TT, pp. 2176-2204, 2212, 2217, 2268-69, 2297. Additionally, the blood found on plaintiff's shoulder was consistent only with Seymour's blood. *Id.*, TT pp. 2262-2268, 2294. Further, the blood on the tissues Tankleff took out of his pockets at Police Headquarters contained blood consistent only with Arlene's blood (although Tankleff claimed never to have entered her bedroom). *Id.* TT, pp. 2276-2281. Despite Tankleff's suggestion to the contrary, the absence of physical evidence on some physical surfaces does not negate its presence elsewhere. Moreover, plaintiff does not and cannot dispute that the Attorney General's office also noted that among the evidence inculpating Tankleff was the fact that there was no sign of a

break in at the Tankleff home, he was the only other person in the house, and he had a stated financial motive to commit the crimes. Defendants' Exhibit WW, p.2.

Probable cause existed, or did not, based on the record established at the time of Tankleff's arrest and indictment; i.e., 1988. The record as to that evidence was established almost twenty years ago, has been extensively litigated in no less than five judicial forums, and is a matter of public record. Tankleff's hope and conjecture that he will now, twenty years later, unearth something to negate that probable cause, through depositions, lacks plausibility.

Once probable cause is established, as it is here, plaintiff's false arrest/imprisonment, malicious prosecution, and civil conspiracy claims are fatally flawed and cannot be allowed to continue. *Gil v. County of Suffolk*, 590 F.Supp. 2d 360, 368-69 (E.D.N.Y. 2008). Minimally, the evidence, wholly separate and apart from Tankleff's confession, establishes arguable probable cause sufficient to establish that defendants are entitled to qualified immunity. *Caldarola*, 298 F.3d at 162. In this regard, plaintiff's claims that defendants have somehow waived qualified immunity as a defense for Counts II, III, IV, V, VI and VII of the complaint lacks any basis in law or fact. Succinctly stated, once arguable probable cause is found to exist, defendants have established entitlement to qualified immunity for all purposes.

Plaintiff's reliance on this Court's decision, upon reconsideration, in *Kogut v. County of Nassau*, 2009 WL 5033937 (E.D.N.Y. 2009) is curious. While plaintiff cites it solely in support of Tankleff's position with respect to collateral estoppel, plaintiff conveniently ignores the manner in which *Kogut* supports several of defendants' arguments herein, including defendants' arguments with respect to plaintiff's malicious prosecution claim. First, *Kogut* reiterates that an essential element of a malicious prosecution claim is lack of probable cause. *Kogut*, 2009 WL 5033937*6. Secondly, assuming, but not conceding, that Tankleff somehow surmounts the

10

probable cause hurdle, *Kogut* supports defendants' argument that the manner in which the criminal proceedings against Tankleff terminated do not suffice as favorable termination so as to establish that element of Tankleff's malicious prosecution claim. *Kogut* does not stand for the proposition that the granting of a CPL § 440 motion always constitutes a favorable termination sufficient to establish that element of a malicious prosecution claim. While the movants in *Kogut*, upon reconsideration, successfully defeated the defendants' Rule 12(c) motion with respect to malicious prosecution, this Court based its finding that the CPL § 440.10 dismissal in *Kogut* could constitute a favorable termination for purposes of a malicious prosecution claim on the fact that the DNA evidence submitted therein supported a finding of defendants' actual innocence, and also established "that other damning material that was presented at trial may have been planted." *Id.* at *8. The DNA evidence in *Kogut* had the effect of negating probable cause because the DNA exonerated the defendants as the victim's rapists.

In sharp contrast here, the Second Department specifically rejected Tankleff's claim of actual innocence (*Tankleff,* 49 A.D. 3d at 182), and granted his CPL § 440 motion on the basis of newly discovered evidence which, under the statutory definition, is evidence that could not have been discovered at the time of trial. The evidence that Tankleff relied upon in his CPL § 440 motion does not contradict or disturb the events that transpired at the time of his arrest, render the prior evidence, insofar as it established probable cause, false or illegally obtained, or "planted." That is, the moving defendants' theory as to how and why Tankleff committed the crimes is not rendered factually impossible on the basis of the evidence that formed the basis of Tankleff's CPL § 440 relief. Stated more plainly, unlike the physical evidence in *Kogut*, there was no evidence such as DNA offered by Tankleff on his CPL § 440 motion that established his actual innocence. Rather, the newly discovered evidence (which by the very terms of the

11

application must be evidence that could not have been discovered at the time of the trial) relied upon by Tankleff merely afforded Tankleff an opportunity to offer the jury at his new trial evidence of an alternative theory as to who committed the crimes.

Accordingly, the existence of probable cause precludes Tankleff's claims for state and federal malicious prosecution, false imprisonment arrest, civil conspiracy, intentional infliction of emotional distress and negligent infliction emotional distress.

### POINT III

### PLAINTIFF'S *BRADY* CLAIMS MUST BE DISMISSED

Tankleff's allegations regarding the prosecution's purported failure to investigate exculpatory evidence, and claimed *Brady* violations pertaining to the alleged knife print on the bedsheet, are precisely the type of blind, unsupported assertions *Iqbal* establishes cannot survive a motion to dismiss. *Iqbal.* 129 S.Ct. at 1949. Tankleff continues to maintain that a knife print was actually found on the bedsheet retrieved from Arlene Tankleff's bedroom. The State's forensic report (referenced in Tankleff's Complaint at ¶ 135) concludes only that the bedsheet showed the presence of a "partial impression pattern which *appears* to be knife-like in design." Defendants' Exhibit HH. That the State's expert observed what to him "appears" to be a pattern in the stains, and the County's expert did not note in his report (Defendants' Exhibit EE) that he observed any such apparent impression, does not equate to a finding, as Tankleff claims, that the County's expert did actually make such an observation and thereafter specifically and intentionally withheld that fact. At best, the State and County's experts disagree on what the staining on the sheet may depict.

Tankleff does not, and cannot, deny that his defense counsel had access to the bloody sheet or that the actual sheet was introduced as evidence, without objection, at trial. Defendants' Exhibit B, TT pp. 2146-51 & Exhibit FF, Trial List, 2178-97; 2442-59. Nor does Tankleff deny that he had photographs of the sheet, and a copy of the prosecution's forensic analysis of same, some twenty months prior to trial. Unlike the facts in *Benn v. Lambert,* 283 F.3d 1040, 1148 (9th Cir. 2002), where a "great deal of impeachment evidence," as well as exculpatory evidence, was not turned over to the defense, including a portion of the expert's findings, here Tankleff's defense counsel had the prosecution's complete forensic report long before trial, as well as the opportunity to challenge the evidence itself at trial.

Similarly unpersuasive are Tankleff's efforts to limit the "essential facts" exception to *Brady* to only witnesses, or their testimony. While Tankleff asserts that the Second Circuit has limited the "essential facts" exception to witness evidence, the Eastern District of New York has applied the "exception" to physical evidence. In *Sturdivant v. Barkley*, 2007 WL 2126093*5-6 (E.D.N.Y. 2007), the petitioner in a writ of habeas corpus proceeding argued that the prosecution's failure to conduct DNA testing on the bags of cocaine introduced into evidence constituted a *Brady* violation. This Court reiterated that, in the first instance, that the prosecution had no obligation to perform any additional forensic tests on the bags of cocaine in evidence. Additionally, this Court held that:

> *Brady* may not be invoked when defense counsel knew of the existence of the evidence, which was equally available to defense counsel, but chose not to pursue the matter. *See U.S. v. Zagari,* 111 F.3d 307, 320 (2d Cir. 1977); *see also Smith,* 2000 WL 709005, at *6 ("The rationale underlying *Brady* is that the defendant should not be denied access to exculpatory evidence only known to the government") (citing *U.S. Zackson,* 6 F.3d 911, 918 (2d Cir. 1993). It is clear from the record that petitioner's defense counsel had knowledge of the bags of cocaine in evidence because the lack of forensic testing was brought out on cross-examination. (R. at 542-3, 627-8). Therefore, defense counsel apparently made a

13

strategic choice not to request DNA testing as a means of garnishing potentially exculpatory evidence.

*Id. See also Batchilly v. Nance*, 2010 WL 1253921 *35 (S.D.N.Y. 2010) (*Brady* may not be invoked when defense counsel knew of the existence of the physical evidence, and that evidence was equally available to him.)

Tankleff's implicit and wholly speculative claim that the County's forensic expert "saw" something in the bloodstains on the sheets, yet failed to record it, is nothing more than a bald assertion lacking any factual foundation whatsoever. Placed in the context of what Tankleff's defense attorney had available to him in terms of the sheet itself and the prosecution's forensic report, and as well as the fact that Tankleff's defense counsel had the opportunity to cross-examine the evidence at trial, Tankleff's allegation that defendants affirmatively misled Tankleff, or withheld exculpatory evidence pertaining to the sheet, when this Court draws on its judicial experience and common sense, it becomes it abundantly clear that Tankleff's allegations "are no more than conclusions," which "are not entitled to the assumption of truth." *Iqbal*, 129 S.Ct. at 1950. As such, Tankleff's claims in the complaint based upon purported *Brady* violations associated with the bloody sheet must be dismissed.

## POINT IV

## PLAINTIFF'S CLAIMS ARE BARRED BY COLLATERAL ESTOPPEL

Plaintiff relies on the unreported decisions in *Kogut,* 2009 WL 5033937, and *McCray v. City of New York*, 2007 WL 4352748 (S.D.N.Y. 2007), to defeat defendants' contention that Tankleff is barred by the doctrine of collateral estoppel from relitigating, *inter alia*, the voluntariness of his confession, whether same was obtained in violation of his *Miranda* rights or was the product of an illegal police-orchestrated ruse, as well as his claims that his due process

rights were violated with respect to the prosecution's failure to disclose information pertaining to Steuerman. Defendants maintain that Tankleff had a full and fair opportunity to, and did in fact, litigate extensively the issues pertaining to the voluntariness of his confession, whether his due process rights were violated in the manner in which it was obtained, as well as defendants' purported *Brady* violations. Inasmuch as the grant of Tankleff's CPL § 440 motion does not render those prior judicial findings irreconcilable with his newly acquired evidence, Tankleff is indeed barred from relitigating those issues.

Minimally, Tankleff is barred from relitigating his *Miranda* claims. In the very decision which granted Tankleff's CPL § 440 motion, the Second Department specifically ruled on his *Miranda* arguments, holding that it would not revisit Tankleff's *Miranda* arguments inasmuch as those "aspects of this case have been extensively litigated." *Tankleff*, 49 A.D.3d at 182. Thus, Tankleff is, at the very least, barred by the doctrine of collateral estoppel from relitigating his *Miranda* claims in the instant § 1983 action because, while he need not have raised the *Miranda* issues in his CPL § 440 motion, he did in fact litigate that issue in his CPL § 440 application. *Id.* at 164. *See Parker v. Blauvelt Volunteer Fire Co.*, 93 N.Y. 2d 343, 350 (1999). Once again, the *Miranda* issues were resolved against Tankleff, in the very decision he now affirmatively relies upon to both bring this civil action, as well as to support his argument that vacatur of his convictions negates the collateral estoppel effect of the prior determinations. *Tankleff*, 49 A.D.3d at 182. As such, he is barred from relitigating his *Miranda* claims.

The Southern District decision in *McCray* is distinguishable from the case at bar. *McCray* does not address the circumstances where, as here, the prior judicial appellate forums specifically addressed the precise issues still sought to be litigated following the grant of a new trial on the basis of newly discovered evidence. Notably, in both *McCray* and *Kogut*, the

15

evidence which formed the basis of the motion for a new trial was DNA evidence, which supported a finding of actual innocence in each of those cases.

Here, Tankleff's newly discovered evidence goes to the credibility a jury will give to defendants' evidence, and the weight of the evidence. Tankleff's "newly discovered evidence" does not, unlike the DNA evidence available in *Kogut* and *McCray*, render Tankleff's confession impossible, or even improbable. Thus, while Tankleff's judgment was ultimately vacated by the Second Department, it was not vacated on the basis of any issues relating to the voluntariness of his confession, a lack of proper *Miranda* warnings, or as a result of any alleged *Brady* violations. Tankleff had a full and fair opportunity to litigate those issues extensively through both the state and federal courts. The new evidence that ultimately formed the basis of Tankleff's successful CPL § 440 motion does not contradict the numerous prior judicial findings specifically addressing the voluntariness of his confession, nor does it undermine the Second Circuit's and Second Department's determinations holding that his confession was obtained legally, or the propriety of the police investigation as to Steuerman. In this regard, plaintiff indeed stretches credibility when he suggests that the Second Department held that the evidence plaintiff submitted with his CPL § 440 motion "sheds new light on the reliability and truthfulness of Mr. Tankleff's confession and is, therefore, directly probative of the tactics used to obtain it." Plaintiff's Memorandum of Law in Opposition to Defendants' Motion Pursuant to F.R.C.P. Rule 12(c), p. 13. The Second Department merely held that Tankleff's evidence proffered in his CPL § 440 motion met the standard required by CPL § 440.10[1][g] to grant such a motion; nothing more. *Tankleff*, 49 A.D.3d at 182.

## CONCLUSION

Based upon the foregoing, defendants submit that plaintiff's complaint must be dismissed, pursuant to Federal Rules of Civil Procedure 12(c), together with such other and further relief as to this Court seems just and proper.


Dated: Hauppauge, New York
      June 8, 2010

                    Respectfully submitted,

                    CHRISTINE MALAFI
                    Suffolk County Attorney
                    Attorney for Defendants
                    COUNTY OF SUFFOLK, K. JAMES
                    McCREADY, NORMAN REIN, CHARLES
                    KOSCIUK, ROBERT DOYLE, and
                    JOHN MCELHONE
                    100 Veterans Memorial Highway
                    Hauppauge, New York 11788
                    (631) 853-4049

           By: _____
                    Richard T. Dunne (RD/6665)
                    Assistant County Attorney

17