UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
MARTIN TANKLEFF,

                    Plaintiff,          <u>MEMORANDUM & ORDER</u>
                                        09-CV-1207(JS)(WDW)

          -against-

THE COUNTY OF SUFFOLK, K. JAMES
MCCREADY, NORMAN REIN, CHARLES
KOSCIUK, ROBERT DOYLE,
JOHN MCELHONE, JOHN DOE POLICE
OFFICERS #1-10, and RICHARD ROE
SUFFOLK COUNTY EMPLOYEES #1-10,

                    Defendants.
----------------------------------X
APPEARANCES:
For Plaintiff:      Barry C. Scheck, Esq.
                    Deborah L. Cornwall, Esq.
                    Emma Kate Freudenberger, Esq.
                    Neufeld Scheck & Brustin, LLP
                    99 Hudson Street, 8th Floor
                    New York, NY 10013

                    Bruce A. Barket, Esq.
                    Quadrino Schwartz
                    666 Old Country Road, Ninth Floor
                    Garden City, NY 11530

                    Barry J Pollack, Esq.
                    Miller & Chevalier Chartered
                    655 Fifteenth St, NW, Suite 900
                    Washington, DC 20005

For Defendants:     Richard T. Dunne, Esq.
                    Susan A. Flynn, Esq.
                    Suffolk County Department of Law
                    H. Lee Dennison Building
                    100 Veterans Memorial Highway
                    Hauppauge, NY 11788

SEYBERT, District Judge:

          Plaintiff, Martin Tankleff ("Plaintiff" or "Tankleff")

commenced this action on March 24, 2009.  Tankleff seeks to recover

pursuant to 42 U.S.C. § 1983 for a variety of constitutional

violations that he allegedly suffered at the hands of Defendants, Suffolk County ("County"), K. James McCready ("McCready"), Norman Rein ("Rein"), Charles Kosciuk ("Kosciuk"), Robert Doyle ("Doyle"), John McElhone ("McElhone"), ten County Police Officers, fictitiously named as John Doe Police Officers #1-10, and ten County employees, fictitiously named as Richard Roe #1-10 (collectively, "Defendants").  Specifically, the Complaint alleges eleven causes of action, which, for purposes of its analysis here, the Court groups as follows: (1) malicious prosecution in violation of 42 U.S.C. § 1983 and state law (Claims I and IX[1]); (2) fabrication of evidence (Claim II); (3) failure to investigate (Claim III), (4) suppression of favorable evidence (Claim IV); (5) coercion, and violation of his right to counsel (Claim V); (6) Civil Rights conspiracy claim (Claim VI); (7) Supervisory Liability based on respondeat superior (Claim VII); (8) Monell Claim (Claim VIII); (8) false imprisonment (Claim X); and (9) intentional or negligent infliction of emotional distress (Claim XI).

Pending before the Court are Defendants' motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (DE 38) and Defendants' appeal of Magistrate Judge William D. Wall's July 9, 2010 Order ("July 2010 Order") denying the County's application to stay discovery.  In

---

[1] Although Plaintiff's Complaint mistakenly refers to his allegations as "Counts", the Court herein uses the proper term "Claims."

their Rule 12(c) motion, Defendants claim that: (1) Plaintiff's claims are barred by the doctrine of collateral estoppel; (2) Plaintiff's claims for malicious prosecution must be dismissed because, _inter alia_, Plaintiff did not obtain a favorable termination of his criminal proceedings; (3) Defendants are entitled to qualified immunity; and, (4) Plaintiff's remaining claims do not survive application of the Supreme Court's holding in <u>Ashcroft v. Iqbal</u>, __ U.S. __, 129 S. Ct. 1937, 173 L. Ed. 2d 868.

For the reasons discussed below, the Court GRANTS in part and DENIES in part Defendants' motion for judgment on the pleadings, and DENIES as moot Defendants' appeal of Judge Wall's July 2010 Order. Specifically, Plaintiff's claims based on conspiracy, supervisory liability under § 1983, false imprisonment, suppression of exculpatory evidence, failure to investigate, and intentional or negligent infliction of emotional distress are DISMISSED. His remaining claims survive.

<u>BACKGROUND</u>[2]

I.   <u>Murder of Seymour and Arlene Tankleff</u>

On September 7, 1988, shortly after 6:00 a.m., Plaintiff placed a phone call to 911 to inform authorities that he had awoke to discover his father, Seymour Tankleff, suffering from severe

---

[2] When deciding a rule 12(c) motion, a district court must "accept all factual allegations in the complaint as true." <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. 308, 322, 127 S. Ct. 2499, 2509, 168 L. Ed. 2d 179, 192 (2007). The facts herein are derived from Plaintiff's Complaint, and are accepted as true for the purpose of deciding this motion. <u>Id.</u>

injuries to the neck.   (Compl. ¶ 40-42.)   After stabilizing his
father, Plaintiff discovered the lifeless body of his mother,
Arlene Tankleff, on the floor of her bedroom.  (<u>Id.</u>)  County police
and medical personnel arrived on the scene at approximately 6:15
a.m.   (<u>Id.</u> ¶ 44.)   Plaintiff directed officers to his parents'
bodies, and was eventually escorted to the backseat of a patrol car
as the crime scene was secured.   (<u>Id.</u> ¶ 45-46.)

        Defendant Detective McCready, the first detective on the
scene, took command of the investigation at approximately 7:40 a.m.
 (<u>Id.</u> ¶ 47.)   After observing the crime scene and speaking with
other officers, McCready interviewed Plaintiff in the patrol car.
(<u>Id.</u> ¶ 49.)  At this point, Plaintiff suggested that his father's
business partner, Jerry Steuerman, had a strong motive to hurt
Seymour Tankleff, and was likely responsible for the attack on his
parents.  (<u>Id.</u>)  Plaintiff repeated this claim shortly thereafter
when interviewed by defendants Sergeant Doyle and Detective Rein.
(<u>Id.</u> ¶ 50.)

        Subsequently, Plaintiff's godfather and the Tankleff
family attorney, Myron Fox, arrived on the scene to bring Plaintiff
to his father, who was clinging to life at Mather Memorial
Hospital. (<u>Id.</u> ¶ 53.)  While Fox was told Plaintiff was on his way
to the hospital, Detective McCready was taking Plaintiff to Police
Headquarters, where he was escorted to a small, windowless room and
questioned for a period of hours. (<u>Id.</u> ¶ 55.)  Plaintiff contends

4

that, despite repeated requests to speak with Fox and visit his father at the hospital, he was never informed of his <u>Miranda</u> rights, nor was he told that he was free to leave. (<u>Id.</u> ¶ 55, 58.)

Plaintiff alleges that the manner of questioning by Defendants was "aggressive," and that Defendants repeatedly made falsified statements implying that evidence pointed towards his guilt. (<u>See id.</u> ¶ 62-66.) Most egregiously, Plaintiff contends that McCready falsely informed him that his father had temporarily regained consciousness at the hospital, and named Plaintiff as his attacker. (<u>Id.</u> ¶ 67.) Eventually, Plaintiff alleges, he was convinced that he may have blacked out and killed his parents without remembering the incident. (<u>Id.</u> ¶ 70.)

After eliciting this admission of possible guilt from Plaintiff, the Complaint alleges that Defendants McCready and Rein began "feeding" Plaintiff their version of the crime, which Plaintiff parroted back to them in a state of shock. (<u>Id.</u> ¶ 74–81.) Subsequently, McCready handwrote a confession in narrative form, which falsely indicated that the details had originated from the Plaintiff. (<u>Id.</u> ¶ 81.) This statement was never signed, as Myron Fox had phoned police headquarters and ordered Plaintiff's release. (<u>Id.</u> ¶ 83–84.) At some point after 8:30 p.m., Plaintiff was arrested for the murder of his mother and the attempted murder of his father; when his father died on October 6, 1988, the attempted murder charge was upgraded to murder. (<u>Id.</u> ¶ 85–86.)

## II. <u>Trial, Appeal and New Evidence</u>

Plaintiff's ten-week trial began on April 23, 1990. (<u>Id.</u> ¶ 114.) During the trial, McCready and Rein allegedly offered false testimony against Plaintiff. Ultimately, a jury found Plaintiff guilty of the first-degree murder of his father and second-degree murder of his mother, and he began serving his sentence at the age of 19.[3] (<u>Id.</u> ¶ 114-121.) Plaintiff appealed his conviction, which was denied by the New York Court of Appeals on December 22, 1994. (<u>Id.</u> ¶ 12.) In 1997, Plaintiff filed a habeas corpus petition in this Court. (<u>Id.</u>) The Petition was denied, and the decision was affirmed by the Second Circuit Court of Appeals in 1998. (<u>Id.</u>)

On October 3, 2003, Plaintiff filed a motion in County Court under New York Criminal Procedure Law § 440, seeking vacatur of his conviction on the grounds of newly discovered evidence and actual innocence. (<u>Id.</u> ¶ 124.) At that hearing, evidence was presented from a number of witnesses indicating, <u>inter</u> <u>alia</u>, the involvement of Steuerman and his associates in the murder of Arlene and Seymour Tankleff. (<u>Id.</u> ¶ 125-130.) However, the County Court denied Plaintiff's motion on March 17, 2006. (<u>Id.</u> ¶ 131.) But on December 18, 2007, the Appellate Division of the New York State

---

[3] In addition to allegations of misconduct arising from the facts in this case, the Complaint also alleges and cites to a number of incidents and reports indicating widespread misconduct in Defendants' previous practice, policies, and customs surrounding investigations and interrogations of suspects. (<u>See</u> <u>Compl.</u> ¶¶ 1-14.)

Supreme Court, Second Department, unanimously reversed the lower court's decision and granted Plaintiff's motion to vacate his conviction on the grounds of newly discovered evidence.  (Id. ¶ 132.)  Importantly, however, the Appellate Division affirmed the lower court's denial of Plaintiff's motion to vacate his conviction based on his actual innocence, holding that he "did not establish entitlement to this relief."  New York v. Tankleff, 49 A.D.3d 160, 182 (App. Div. 2007).

On December 27, 2007, Plaintiff was released from prison.  (Id. ¶ 133.)  Subsequently, County District Attorney Spota requested that the Governor's office appoint a special prosecutor from the Attorney General's Office to investigate the murders of Arlene and Seymour Tankleff.  (Id. ¶ 134.)  Following that investigation, the Attorney General's Office moved to dismiss the charges against plaintiff "in the interest of justice" pursuant to CPL § 210.40.  (Id. ¶ 136.)  On July 22, 2008, the New York Supreme Court, Suffolk County, granted that motion and dismissed all charges against Plaintiff.  (Id. ¶ 137.)

<u>DISCUSSION</u>

I.   <u>Standard of Review Under Rule 12(c)</u>

The standard for evaluating a motion for judgment on the pleadings, pursuant to Rule 12(c), is the same standard applied under a motion to dismiss under Rule 12(b)(6).  See Karedes v. Ackerley Group, Inc., 423 F.3d 107, 113 (2d Cir. 2005).

Accordingly, to withstand a motion to dismiss under Rule 12(c), a complaint must plead facts sufficient "to state a claim for relief that is plausible on its face." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) (applying a plausibility standard for a motion under Rule 12(b)(6)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Ashcroft v. Iqbal</u>, __ U.S. __, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). "The Plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." <u>Id.</u> Thus, "where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." <u>Id.</u> (internal citations and quotations omitted).

Examining whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Id.</u> at 1950. "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a complaint fails to state a claim upon which relief can be granted. <u>Id.</u> In short, a plaintiff's factual allegations must show that the claim is "plausible," and not merely "conceivable." <u>Id.</u> at 1951.

Under Rule 8 of the Federal Rules of Civil Procedure, a claimant is only required to give "a short and plain statement of the claim that will give the defendant fair notice of what the [Plaintiff's] claim is and the grounds upon which it rests." Twombly, 550 U.S. at 554 (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). Thus, for purposes of this motion, the Court need only "assess the feasibility of the complaint, not [] assay the weight of the evidence which might be offered in support thereof." Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980).

## II. Collateral Estoppel

### A. Standard

Defendants argue that Plaintiff's various claims of constitutional deprivations--specifically, that his confession was involuntary and secured without regard for his Miranda rights--are barred by the doctrine of collateral estoppel (or issue preclusion) because these issues have been decided and litigated in other forums. On the other hand, Plaintiff argues that collateral estoppel is inapplicable because his conviction has been vacated.

When applying the doctrine of issue preclusion, a district court must look to the laws of the state in which the action is being litigated. See Green v. Montgomery, 219 F.3d 52, 55 (2d Cir. 2000). Under New York law, a plaintiff seeking to invoke the doctrine of issue preclusion must show (1) "that the

identical issue was necessarily decided in the prior action and is decisive in the present action", and (2) that "the party to be precluded from relitigating an issue . . . had a full and fair opportunity to contest the prior determination." Darata v. N.Y. Cent. Mut. Fire Ins. Co., 564 N.E.2d 634, 76 N.Y.2d 659, 664, 563 N.Y.S.2d 24 (1990) (citing Kaufman v. Lilly & Co., 482 N.E.2d 63, 65 N.Y.2d 449, 455-56, 492 N.Y.S.2d 584 (1985)); see also Green, 219 F.3d at 55.  When a court makes a "final judgment, and the determination is essential to the judgment, the determination is conclusive." Kogut v. County of Nassau, No. 06-CV-6695, 2009 WL 5033937, at *9 (E.D.N.Y. Dec. 11, 2009) (quoting Restatement (second) of Judgments § 27 (1980)).

In Owens v. Treder, a plaintiff brought a § 1983 action alleging that his prior confession was false and had been coerced through police brutality. 873 F.2d 604, 605 (2d Cir. 1989)). Defendants moved for summary judgment arguing that the issue of the voluntariness of plaintiff's confession was precluded, since it had been litigated at plaintiff's prior criminal trial and affirmed on appeal.  Id. at 606.  The District Court held that since the Appellate Division, Second Department, in affirming plaintiff's conviction, failed to make a special finding on the issue of the voluntariness of the confession, the issue was not precluded.  Id. at 612.  However, the court emphasized that "[h]ad [the Appellate Division] specifically addressed the suppression issue, we would

10

have no problem in determining that collateral estoppel would apply." Id. at 610-11 (emphasis added). However, this standard must be read in conjunction with the other rulings holding that "[a] vacated judgment, by definition, cannot have any preclusive effect in subsequent litigation." Kogut, 2009 WL 5033937 at *10. (quoting Boston Firefighters Union v. Boston Police Patrolmen's Ass'n, 468 U.S. 1206, 1211, 104 S. Ct. 3576, 82 L. Ed. 2d 874 (1984)).

The plaintiffs in Kogut brought similar § 1983 claims to those alleged here action against Nassau County and Nassau County Police Officers. There, one of the plaintiffs, John Kogut, during a lengthy interrogation without his counsel, confessed to the murder and rape of a fourteen-year-old girl and therein implicated the other two plaintiffs. Years later, after being released from prison because of newly discovered DNA evidence, all three plaintiffs sought to reargue that Kogut's confession was coerced in violation of his constitutional rights. 2009 WL 5033937, at *9. Defendants, however, maintained that relitigation of this issue should be barred by collateral estoppel.

In allowing the plaintiffs' § 1983 claims to continue past the motion to dismiss stage, this Court held that collateral estoppel did not prevent the plaintiffs from relitigating the voluntariness of Kogut's confession; the issue had been previously decided in the prior action, but because plaintiffs' convictions

11

had been vacated, the vacated judgment did not have a preclusive effect on subsequent proceedings.  Id. at 10.

    B.   Claim V Application

        Similarly, Defendants here argue that Plaintiff's "allegations regarding the alleged unconstitutional improprieties associated with his interrogation and confession, as well as his claims of purported Miranda violations, have been previously asserted, raised and litigated in his direct appeal from his conviction and in his habeas corpus proceedings", (Defs.' Mem. in Supp. 6), and thus the issue has been "specifically addressed" as required by New York Law.  However, like in Kogut, those judgments were vacated by the Second Department.  See Tankleff, 848 N.Y.S.2d 302.  Thus, the prior proceedings have no preclusive effect as to Plaintiff's claims of coercion or Miranda violations.  The Court DENIES Defendants' motion to dismiss Plaintiff's claims on this ground.

II.   Malicious Prosecution and the Rule Against Undermining Underlying Convictions in Parallel Civil Proceedings

        Generally, the law protects criminal complainants against a civil action for damages where the criminal proceeding results in the defendant's conviction.  See Robbins v. Robbins, 30 N.E. 977, 978, 133 N.Y. 597, 599 (1892).  Such a policy is necessary to avoid conflicting findings in criminal and civil courts:

        [I]f [an] action for malicious prosecution were allowed to be maintained before the termination of the criminal proceeding [in

> plaintiff's favor,] the plaintiff might be
> found guilty in that proceeding, and yet
> maintain [his] action for malicious
> prosecution on the ground that []he was not
> guilty, and that the defendant had no probable
> cause to believe [him] guilty; and thus there
> might be two conflicting determinations as to
> the same transaction.

Id. Thus, when fairly conducted, a criminal proceeding that
results in the conviction of the person charged with a crime "is
held to be conclusive evidence of probable cause. Id. On the
other hand

> where the criminal proceeding is terminated
> favorably to the accused, or without his
> conviction, so that there can be no further
> proceeding upon the complaint or indictment,
> and no further prosecution of the alleged
> offense without the commencement of a new
> proceeding, then there has been a sufficient
> termination thereof to enable him, proving the
> other requisite facts, to maintain an action
> for a malicious prosecution.

Id.

In this case, the parties urge different interpretations
of what constitutes a favorable determination of the prior
proceedings.

A.    Claim I: Heck v. Humphrey and Malicious Prosecution
      Under § 1983

When a claim for damages under § 1983 calls into question
the validity of an underlying conviction, a district court must
dismiss the claim, unless the conviction has been invalidated.
Heck v. Humphrey, 512 U.S. 477, 487, 114 S. Ct. 2364, 129 L. Ed. 2d

13

383 (1994).[4]  The petitioner in Heck was an inmate with a direct appeal from his conviction pending, who brought a § 1983 action for damages against state officials who, he claimed, acted unconstitutionally in arresting and prosecuting him.  Drawing an analogy to the tort of malicious prosecution, the Supreme Court held that an inmate's § 1983 claim for damages was unavailable because he could not demonstrate that the underlying criminal proceedings had terminated in his favor.  Id. at 486-87.  This favorable termination requirement is similarly applicable to a released prisoner seeking to bring a § 1983 action implying the invalidity of a conviction.  Id. at 490, n.10.

As this Court pointed out in a similar case, Koqut v. County of Nassau, No. 06-CV-6695, the Supreme Court in Heck enumerated four methods of demonstrating that a conviction has been invalidated: (1) the conviction was reversed on a direct appeal; (2) an executive order expunged the conviction; (3) a habeas corpus petition was issued by a federal court; or (4) an authorized state tribunal declared the conviction invalid.  Id. at 486-87.  In this case, Plaintiff cannot maintain that his conviction was invalidated by any of the first three methods.  Therefore, Plaintiff argues

---

[4] Inexplicably, the parties altogether fail to discuss Heck. Nevertheless, the Court is required to conduct its own independent Heck inquiry so as to avoid the unintentional rendering of conflicting decisions.  See Jean-Laurent v. Hennessy, No. 05-CV-1155, 2008 WL 3049875, at *7, n.11 (E.D.N.Y. Aug. 1, 2008) (dismissing claims sua sponte as violative of Heck).

that he can overcome Heck because his conviction was vacated and the charges against him were later dismissed. Defendants, on the other hand, maintain that Plaintiff fails to satisfy any of the four possibilities outlined in Heck.

For purposes of deciding the applicability of Heck here, the most informative case, aside from Kogut, is the Second Circuit's decision in DiBlasio v. City of New York, 102 F.3d 654 (2d Cir. 1996). DiBlasio involved a physician who, in 1986, was convicted of the criminal sale of a controlled substance (cocaine) in the first, second and third degrees, and criminal possession of a controlled substance in the fourth degree. Four years later, following an unsuccessful appeal in the State courts, the United States District Court for the Eastern District of New York granted DiBlasio a writ of habeas corpus based on his claim that the prosecution's failure to produce or identify a confidential informant deprived him of a fair trial. The Second Circuit affirmed. DiBlasio v. Keane, 932 F.2d 1038 (2d Cir. 1991). The State retried DiBlasio, and he was convicted only on the charge of unlawful possession. Subsequently, DiBlasio brought a malicious prosecution claim against the police officers claim pursuant to 42 U.S.C. § 1983. The district court dismissed the complaint as time-barred and for failure to state a claim. DiBlasio appealed.

In examining DiBlasio's malicious prosecution claim, the Second Circuit began by outlining the four elements of a common law

15

tort for malicious prosecution: "(1) commencement or continuance of a criminal proceeding, (2) lack of probable cause, (3) existence of malice, and (4) termination in plaintiff's favor." DiBlasio v. City of New York, 102 F.3d 654, 657 (2d Cir. 1996). Turning to the question of favorable termination, the Circuit wrote: "Proceedings are 'terminated in favor of the accused' only when their final disposition is such as to indicate the accused is not guilty." Id. Ultimately, the Second Circuit rejected DiBlasio's claim because his habeas did not demonstrate his innocence; hence, his later retrial and conviction of the lesser crime of possession.

In this case, Plaintiff's conviction was set aside because of newly discovered evidence that pointed to other potential perpetrators. Unlike in Koqut, where the plaintiffs' convictions were set aside because of, inter alia, newly discovered DNA evidence indicating that they were not the rapists or murderers, the evidence here does not indicate actual innocence with the same degree of certainty. See Koqut, 2009 WL 5033937, at *8-9. Moreover, here Plaintiff sought to have his conviction set aside under CPL § 440 based on actual innocence and newly discovered evidence. But the lower court denied Plaintiff relief based on actual innocence, and upon review of this decision, the Second Department specifically stated that Plaintiff "did not establish entitlement to this relief." Tankleff, 49 A.D.3d at 182.

This Court agrees with the Second Department; the newly

16

discovered evidence supports Plaintiff's theories that someone else might be responsible for the murders of Seymour and Arlene Tankleff, but it does not necessarily establish actual innocence, see DiBlasio, 102 F.3d at 657. Nevertheless, for purposes of surviving Defendants' motion to dismiss, Plaintiff has gone far enough. Accordingly, the Court DENIES Defendants' motion to dismiss this claim. The Court notes, however, that if after discovery the evidence does not more strongly establish Plaintiff's actual innocence, his § 1983 malicious prosecution claims may still be barred by Heck at the summary judgment stage of this case.

> B.  Claim IX: Malicious Prosecution under New York Law: Invalidation Under New York Law, Motions Pursuant to N.Y. CRIM. PROC. LAW § 440.10(1)(g), the Attorney General's Dismissal of the Indictments, New York v. Crimmins, and Smith-Hunter v. Harvey

To maintain a malicious prosecution claim under New York law, a plaintiff must establish the same four elements as under a § 1983 claim: "(1) the commencement or continuation of a criminal proceeding by the defendant against the plaintiff, (2) the termination of the proceeding in favor of the accused, (3) the absence of probable cause for the criminal proceeding and (4) actual malice[.]" Smith Hunter v. Harvey, 734 N.E.2d 750, 752, 95 N.Y.2d 191, 195, 712 N.Y.S.2d 438, 440 (2000). Again, the biggest hurdle for Plaintiff to overcome remains the favorable termination requirement.

Plaintiff's convictions were vacated pursuant to New York

Criminal Procedure Law § 440.10.   Section 440.10 provides in relevant part:

> 1. At any time after the entry of a judgment, the court in which it was entered may, upon motion of the defendant, vacate such judgment upon the ground that: . . .
>
> (g) New evidence has been discovered since the entry of a judgment based upon a verdict of guilty after trial, which could not have been produced by the defendant at the trial even with due diligence on his part and which is of such character as to create a probability that had such evidence been received at the trial the verdict would have been more favorable to the defendant; provided that a motion based upon such ground must be made with due diligence after the discovery of such alleged new evidence . . . .

N.Y. CRIM. PROC. LAW § 440.10(1)(g) (McKinney 2007).   In interpreting this section, the New York State Court of Appeals has stated that, on "motion to vacate judgment upon the ground of newly discovered evidence[,] the validity of the judgment is not attacked, only the likelihood of a similar verdict being rendered if there were an enlargement of the evidence on the principle issue." New York v. Crimmins, 343 N.E.2d 719, 728, 38 N.Y.2d 407, 381 N.Y.S.2d 1 (1975).   Nevertheless, as the Court pointed out in Kogut, much has happened since the Crimmins decision, thirty-five years ago.

Smith-Hunter involved a plaintiff who was charged with trespass, a violation under New York Penal Law § 140.05.   After her arraignment, plaintiff served demands for discovery and filed a motion to dismiss.   After approximately four months, the prosecutor

18

failed to respond to plaintiff's demands, and he failed to appear on six separate court dates.  Smith Hunter, 734 N.E.2d at 751-52. Plaintiff then moved to dismiss pursuant to Criminal Procedure Law § 30.30, New York's speedy trial statute, and the trial court granted the motion.   Thereafter, plaintiff brought a malicious prosecution claim against the prosecutor.

During the malicious prosecution trial, the New York State Supreme Court granted defendant's' summary judgment motion on the basis that dismissal pursuant to § 30.30 provides "nothing . . . from which it can fairly be implied that . . . the accused [was] innocent of the charges lodged against her."  Id. at 752.  The Appellate Division affirmed, "concluding that a CPL 30.30 dismissal could never constitute a 'favorable termination.'"  Id.  Plaintiff appealed.

The Court of Appeals began its analysis with the general rule under New York law: "As we stated in Robbins v. Robbins, 133 N.Y. 597, 599, 30 N.E. 977, a criminal proceeding is terminated favorably to the accused when 'there can be no further proceeding upon the complaint or indictment, and no further prosecution of the alleged offense.'   Moreover, it makes no 'difference how the criminal prosecution is terminated, provided it is terminated, and at an end[.]'"  Id. at 753.  The court then went on to discuss the exceptions to the common law, where termination of the criminal prosecution does not imply the innocence of the accused:

>A termination is not considered favorable, for example, if the charge is dismissed []because of misconduct on the part of the accused or in his behalf for the purpose of preventing proper trial . . . . [A]n accused should not benefit where his own misconduct. . . .

>A termination is not favorable to the accused, additionally, if the charge is withdrawn or the prosecution abandoned pursuant to a compromise with the accused.  Indeed, it is hornbook law that []where charges are withdrawn or the prosecution is terminated . . . by reason of a compromise into which [the accused] has entered voluntarily, there is no sufficient termination in favor of the accused . . . .  Accordingly, . . . an adjournment in contemplation of dismissal- a disposition that requires the consent of the prosecutor, the accused and the court- does not qualify as a favorable termination.

>Similarly, if the charge is withdrawn or dismissed out of mercy requested or accepted by the accused, there is no favorable termination.  Mercy, it is reasoned, would not be appropriate if the prosecution were groundless; rather, mercy []implies a belief in the guilt of the accused or at the least in the possibility that he may be guilty . . . .

Id. at 753-54 (quotation marks and citations omitted).  After examining the record in the prior criminal proceeding, the court found that "the prosecution terminated in a manner not inconsistent with plaintiff's innocence."  Id. at 755.  It then rejected defendant's argument that a plaintiff must establish her innocence prior to recovery on a malicious prosecution claim, id., and instead held that only "dispositions inconsistent with innocence . . . cannot be viewed as favorable to the accused." Id. (rejecting the language in Ward v. Silverberg, 652 N.E.2d 914, 85 N.Y.2d 993,

994, 629 N.Y.S.2d 168 (1995), <u>Hollender v. Trump Vil. Coop.</u>, 448 N.E.2d 432, 58 N.Y.2d 420, 461 N.Y.S.2d 765 (1983), and <u>MacFawn v. Kresler</u>, 666 N.E.2d 1359, 88 N.Y.2d 859, 644 N.Y.S.2d 486 (1996) implying that plaintiff had to affirmatively prove her innocence to maintain a malicious prosecution claim).   Accordingly, the Court reversed and remanded the case to the Supreme Court.

As this Court stated in <u>Kogut</u>, the <u>Smith-Hunter</u> holding may have a broader application beyond the speedy trial context. Thus, the Court reads the <u>Crimmins</u> decision, together with <u>Smith-Hunter</u>, as establishing that a 440.10 dismissal alone does not necessarily establish a defendant's innocence such that he may automatically satisfy the favorable termination requirement. Where, however, the new evidence justifying 440.10 relief "strongly implicates defendant's innocence, and evidence that other damning material that was presented at trial may have been [falsified], it is possible that 440.10 dismissal could constitute favorable termination for purposes of bringing a malicious prosecution claim." <u>Kogut</u>, 2009 WL 5033937, at *8; <u>see</u> <u>generally</u> <u>Smith Hunter v. Harvey</u>, 734 N.E.2d 750, 752, 95 N.Y.2d 191, 195, 712 N.Y.S.2d 438, 440 (2000); <u>Hollender v. Trump Vil. Coop.</u>, 448 N.E.2d 432, 58 N.Y.2d 420, 461 N.Y.S.2d 765 (1983).

Here, assuming all of the allegations in the Complaint to be true, Plaintiff has gone far enough to defeat Defendants' Rule

21

12(c) motion.  Thus, the Court DENIES Defendants' motion to dismiss this claim.

III.   <u>Claims II, III, and IV: Fabrication of Evidence,
       Suppression of Evidence, and Failure to Investigate</u>

    A.   <u>Falsified Evidence</u>

        Claims of falsified evidence only constitute a cause of action under Section 1983 when the falsified evidence results in a deprivation without due process of law in violation of the Fifth Amendment.  <u>Zahrey v. Coffey</u>, 221 F.3d 342, 349 (2d Cir. 2000).  In order to establish a claim for falsified evidence a plaintiff must demonstrate the following: (1) that defendant utilized misconduct in order to procure false evidence; (2) that the plaintiff suffered a deprivation of liberty; and (3) that the "deprivation of liberty may be considered a legally cognizable result of the initial misconduct."  <u>Id.</u> at 348.  This causation requirement is consistent with Supreme Court precedent, which establishes "that section 1983 claims 'should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions.'"  <u>Id.</u> at 349-50 (citing <u>Malley v. Briggs</u>, 475 U.S. 335, 344-45 n.7, 106 S. Ct. 1092, 89 L. Ed. 2d 271 (1986)).

        Here, presuming all facts asserted in the Complaint to be true, and after finding that Plaintiff is not precluded from relitigating his claims of coercion, the Court holds that Plaintiff has sufficiently established, for purposes of withstanding Defendants' motion to dismiss, a claim for a due process violation

22

based on the offering of falsified evidence.   Accordingly, Defendants' motion to dismiss this claim is DENIED.

 B. <u>Suppression of Evidence and Failure to Investigate</u>

  Under <u>Brady v. Maryland</u> and its progeny, the government has a due process obligation to disclose, without delay, material information that is favorable to the accused, either because it is exculpatory, or because it is impeaching.   373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963); <u>see</u>, <u>e.g.</u>, <u>Strickler v. Greene</u>, 527 U.S. 263, 281-82, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999); <u>United States v. Rodriquez</u>, 496 F.3d 221, 225 (2d Cir. 2007); <u>United States v. Avellino</u>, 136 F.3d 249, 255 (2d Cir. 1998).   The rationale underlying Brady is that the defendant should not be denied access to exculpatory evidence only known to the government. <u>United States v. Zackson</u>, 6 F.3d 911, 918 (2d Cir. 1993).   The prosecution is not, however, required to disclose evidence it does not possess or of which it is not aware, <u>see United States v. Tillem</u>, 906 F .2d 814, 824 (2d Cir. 1990), and there is no due process requirement that the government use any particular investigatory tool, including quantitative testing, to secure exculpatory evidence.   <u>Arizona v. Youngblood</u>, 488 U.S. 51, 58-59, 109 S. Ct. 333, 102 L. Ed. 2d 281 (1988).   Nor does the government commit a <u>Brady</u> violation when the evidence was equally available to the defense, and the defense chose not to pursue this course of investigation.   <u>Cf. Morgan v. Salamack</u>, 735 F.2d 354, 358 (2d Cir.

1984); see also United States v. LeRoy, 687 F.2d 610, 618 (2d Cir. 1982) (no obligation to disclose exculpatory evidence "if the defendant either knew, or should have known, of the essential facts permitting him to take advantage of any exculpatory evidence").

In this case, Plaintiff cannot maintain a claim against the Defendants for their failure to disclose material (1) of which the Defendants were not aware, or (2) about which the Plaintiff was already aware.  Defendants argue, and Plaintiff does not refute, that defense counsel was aware of the bloody sheets and simply chose not to test them.  Additionally, Plaintiff has not established that Defendants suppressed any other exculpatory material.  Accordingly, the Court DISMISSES these claims.

IV.  Conspiracy

To establish a conspiracy claim under Section 1983, Plaintiff must allege "(1) an agreement between two or more state actors, or between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."  Pangburn v. Culbertson, 200 F.3d 65, 72 (2d. Cir. 1999); see also Ciambrello v. County of Nassau, 292 F.3d 307, 324-25 (2d Cir. 2002); Carson v. Lewis, 35 F. Supp. 2d 250, 271 (E.D.N.Y. 1999).  Additionally, the complaint must allege facts that plausibly suggest a "meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end."  Romer v. Morgenthau, 119

24

F. Supp. 2d 346, 363 (S.D.N.Y. 2000) (quoting Warren v. Fischl, 33 F. Supp. 2d 171, 177 (E.D.N.Y. 1999)); see also Webb v. Goord, 340 F.3d 105, 110 (2d Cir. 2003). Dismissal is proper if the complaint "contain[s] only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights." Ciambrello, 292 F.3d at 325 (citation omitted). Finally, a "violated constitutional right is a natural prerequisite to a claim of conspiracy to violate such right." Romer, 119 F. Supp. 2d at 363 (citing Malsh v. Austin, 901 F. Supp. 757, 765 (S.D.N.Y. 1995)). If a "plaintiff cannot sufficiently allege a violation of his rights, it follows that he cannot sustain a claim of conspiracy to violate those rights." Id.

In this case, even if the Court assumes, for the sake of argument, that Plaintiff has sufficiently established the above-mentioned requirements, his conspiracy claim is still barred by the intra-corporate conspiracy doctrine. This doctrine "posits that the officers, agents, and employees of a single corporate or municipal entity, each acting within the scope of [their] employment, are legally incapable of conspiring with each other." Rodriquez v. New York, No. 05-CV-5117, 2008 U.S. Dist. LEXIS 9966, at *83 (E.D.N.Y. Feb. 11, 2008). "Although the doctrine had its genesis in cases involving corporations," numerous courts within the Circuit have applied the doctrine to public entities. Everson v. N.Y.C. Transit Auth., 216 F. Supp. 2d 71, 76 (E.D.N.Y. 2002);

25

<u>Silverman v. New York</u>; 98-CV-6277, 2001 U.S. Dist. LEXIS 22537, at *13 (E.D.N.Y. Nov 19, 2001); <u>Huntemann v. City of Yonkers</u>, No. 95-CV-1276, 1997 WL 527880, at *14 (S.D.N.Y. Aug. 25, 1997); Rini, 886 F. Supp. at 292 (collecting cases); <u>Wintz v. Port Auth. of N.Y. & N.J.</u>, 551 F. Supp. 1323, 1325 (S.D.N.Y. 1982).

    In this case, Plaintiff alleges that all members of the supposed conspiracy were employees of the Suffolk County Police Department.    Accordingly, his conspiracy claim is barred as a matter of law.

VI.    <u>Supervisory Liability for § 1983 Violations by Subordinates</u>

    As Defendants properly point out, vicarious liability is inapplicable to § 1983 suits; accordingly, a plaintiff must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution.    <u>Iqbal</u>, 129 S. Ct. at 1948.

    In his Complaint, Plaintiff blankety asserts that "Defendants Doyle, McElhone, and Richard Roe supervisors were personally involved in both the deprivation of Mr. Tankleff's constitutional rights and in creating or condoning the policy or custom of failing to take preventative and remedial measures to guard against such constitutional deprivations." (Compl. ¶ 173.) But Plaintiff fails to make any specific allegations about how Doyle, McElhone, or other supervisors committed these violations. In fact, it is unclear to the Court how the supervisory positions

26

of these Defendants is relevant to Plaintiff's § 1983 claims at all.[5]  Thus, the Court DISMISSES these claims.

VII.  <u>Monell Claim</u>

To prevail against a municipality in a Section 1983 action, a plaintiff must plead and prove three elements: (1) an official policy or custom that (2) caused the plaintiff to be subjected to (3) a denial of a constitutional right.  <u>See</u> <u>Hartline v. Gallo</u>, 546 F.3d 95, 103 (2d Cir. 2008); <u>Zahra v. Southold</u>, 48 F.3d 674, 685 (2d Cir. 1995); <u>Batista v. Rodriquez</u>, 702 F.2d 393, 397 (2d Cir. 1983); <u>see also</u> <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 690 91, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1977).  "Local governing bodies . . . may be sued for constitutional deprivations pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels."  <u>Monell</u>, 436 U.S. at 690-91 (citations omitted).  A plaintiff also has the burden of showing "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation."  <u>City of Canton v. Harris</u>, 489 U.S. 378, 385, 109 S. Ct. 1197, 1203, 103 L. Ed. 2d 412 (1989).  "It is only when the 'execution of the government's policy or custom . . . inflicts the injury' that the municipality may be held liable under § 1983."

---

[5] Although these claims are particularly poorly plead, it is possible that Plaintiff intended to raise state law claims of negligent supervision.  Even if he did intend to raise such claims, however, Plaintiff does not provide sufficient detail to survive a motion to dismiss.

<u>Springfield v. Kibbe</u>, 480 U.S. 257, 267, 107 S. Ct. 1114, 1119, 94 L. Ed. 2d 293 (1987) (O'Connor, J., dissenting).

In this case, Plaintiff adequately alleges all three elements. Specifically, Plaintiff asserts that in or around the time he was convicted, Defendants had a custom or practice in place whereby investigating officers would use physical force and other interrogation techniques, and even gives specific examples. (<u>See</u> <u>Compl.</u> ¶¶ 1-14.) Additionally, as discussed <u>supra</u>, for purposes of this motion, Plaintiff has sufficiently plead that he suffered a constitutional violation and that the violation resulted from Defendants' unconstitutional customs. Therefore, the Court DENIES Defendants' motion with regard to this claim.

VIII. <u>Claim X: False Imprisonment</u>

A plaintiff seeking to recover for false imprisonment must demonstrate four elements: "(1) the defendant intended to confine [the plaintiff], (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." <u>Curry v.</u> <u>Syracuse</u>, 316 F.3d 324, 335 (2d Cir. 2003) (citing <u>Weyant v. Okst</u>, 101 F.3d 845, 853 (2d Cir. 1996)). However, the existence of probable cause at the time of arrest constitutes a complete defense. <u>Jenkins v. New York</u>, 478 F.3d 76, 84 (2007). Therefore, a "plaintiff will [only] prevail on a claim . . . if he can show that the arrest was . . . not based on probable cause. <u>Id.</u>

(referring to <u>Broughton v. New York</u>, 335 N.E.2d 310, 37 N.Y.2d 451, 456-57, 373 N.Y.S.2d 87 (N.Y. 1975)).

Here, Plaintiff has no problem establishing the first three elements.  Fulfilling the fourth requirement--that the confinement was not otherwise privileged (i.e., established by probable cause)--is trickier.  Even if the Court accepts as true the allegations that Plaintiff's confession was coerced and that all of the Defendants testified falsely before and during Plaintiff's trial, there was still a substantial amount of evidence to establish probable cause for Plaintiff's initial arrest. Defendants properly point out, and Plaintiff does not deny, that the following evidence was offered at his trial, and none of it was tainted either by coercion or Defendants' alleged false testimony:

> - although Tankleff told the Detectives at the scene that he had used the phone in his father's office to call 9-1-1, the blood spatter on the phone had not been disturbed;
>
> - although Tankleff told the Detectives at the scene that he rendered aid to his father, who had blood gushing out of his neck wound, no blood was observed on plaintiff's clothing;
>
> - although Tankleff stated to Detectives at the scene that, after rendering aid to his father, he then checked the garage, there was no blood on the door handle to the garage, or the dead bolt on the garage door, which was locked;
>
> - Tankleff stated to Detectives at the scene that he never entered his mother's bedroom, and observed from the door to the bedroom that her throat had been cut and that she was dead; however, Detectives at the scene could not

observe Arlene's injuries until they entered
the bedroom and stood directly over her;

- Tankleff stated to Detectives at the scene
that, after rendering aid to his father, his
hands were covered with blood, yet the phones
in the kitchen, one of which Tankleff used to
speak to his sister and a friend on four
occasions, had no blood on them;

- Tankleff stated to Detectives at the scene
that, after getting up, he first looked in his
mother's bedroom, which was dark because the
drapes were drawn, and he did not see anyone.
Yet when the Detectives inspected the scene
they observed that the drapes in the master
bedroom were open;

- Tankleff did not appear upset or emotional
[to investigators] at the scene[;]

- although his bedroom was directly across the
hall from the master bedroom, Tankleff never
claimed to have heard anything, although it
appeared to Detectives at the scene that there
had been a struggle in Arlene's bedroom.

        . . . .

- Arlene had injuries on the back of her head
and back, which could not be observed at the
crime scene until after she had been rolled
over, which occurred after the Detectives took
Tankleff's confession, which injuries were
consistent with Tankleff's confession;

- after being arrested, Tankleff was heard
telling his sister that he "acknowledged to
the police that [he] did it;"

- examination of the crime scene revealed no
sign of an intrusion;

- blood was observed on the door knob, light
switch and wall near that switch in
plaintiff's bedroom;

- the blood spatter on the phone in the office
where Seymour was found had not been disturbed
after the spattering;

- the watermelon knife found in the kitchen
was not in the position that the card player,
who had used the knife, described having
placed it on the evening of the card game;

- Arlene's autopsy results were consistent
with Tankleff's confession as to how he killed
his mother, and

- those in attendance at the card game did not
observe any problems at the game between any
of the players including Steuerman and
Seymour.

(Defs.' Mem. in Supp. 15-17 (citing Defs.' Aff. in Supp. ¶¶ 3-10,
15-20, 24, 28, 42, 45, 49, 51, 77, 81, 96-99, 101-111, 181-83).)

Based on the above-mentioned evidence and other non-
tainted evidence in the case, notwithstanding his confession, the
Defendants seemingly had probable cause to arrest Plaintiff.
Accordingly, the Court GRANTS Defendants' motion to dismiss
Plaintiff's false imprisonment claims.

IX.  <u>Claim XI: Intentional or Negligent Infliction of Emotional
Distress</u>

Under New York law, it is well settled that the
"'circumstances under which recovery may be had for purely
emotional harm are extremely limited and, thus, a cause of action
seeking such recovery must generally be premised upon a breach of
a duty owed directly to the plaintiff which either endangered the
plaintiff's physical safety or caused the plaintiff fear for his or
her own physical safety.'" <u>Jason v. Krey</u>, 2009 WL 614961, at *1

31

(App. Div. Mar. 10, 2009) (quoting Creed v. United Hosp., 190 A.D.2d 489, 491, 600 N.Y.S.2d 151 (App. Div. 1993)). And while physical injury is not an element that must, as a matter of law, be established for purposes of recovery, New York courts have exhibited a "longstanding reluctance to recognize causes of action for negligent infliction of emotional distress, especially in cases where the plaintiff suffered no independent physical or economic injury. . . . [because] tort liability is not a panacea capable of redressing every substantial wrong." Broadnax v. Gonzalez, 2 N.Y.3d 148, 153, 809 N.E.2d 645, 648, 777 N.Y.S.2d 416, 419 (2004) (carving out an exception to the general rule, and allowing expectant mothers to recover damages for emotional stress in cases involving medical malpractice resulting in miscarriage or stillbirth); see also Mobley v. King, 4 N.Y.3d 627, 637, 830 N.E.2d 301, 304, 797 N.Y.S.2d 403, 406 (2005) (recognizing the holding in Broadnax as "a narrow one, intended to permit a cause of action where otherwise none would be available to redress the wrongdoing that resulted in a miscarriage or stillbirth.")

Here, Plaintiff has not adequately plead circumstances demonstrating that Defendants breached a duty owed directly to him which either endangered his physical safety or caused him fear for his own physical safety. Moreover, Plaintiff has not plead that he suffered any physical injury or that this case warrants inclusion within Broadnax's narrow holding. Accordingly, this claim is

32

DISMISSED.

<u>CONCLUSION</u>

For the reasons set forth above, the Court GRANTS in part and DENIES in part Defendants' motion for judgment on the pleadings, and DENIES as moot Defendants' appeal of Judge Wall's July 2010 Order.  Plaintiff's claims based on conspiracy, supervisory liability under § 1983, false imprisonment, suppression of exculpatory evidence, failure to investigate, and intentional or negligent infliction of emotional distress are DISMISSED.  His remaining claims survive.


SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:      December  21 , 2010
            Central Islip, New York